UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DOLAN, and TAMARA DOLAN,<br><br>                                    Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER; U.S. BANK, NATIONAL ASSOCIATION as trustee for the HARBORVIEW MORTGAGE LOAN TRUST 2006-4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4; MTC FINANCIAL INC., d/b/a TRUSTEE CORPS; and DOES 1-100, inclusive,<br><br>                                    Defendants. | Case No.:  25-cv-2242-GPC-BJW<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>**[ECF Nos. 31, 33]** |

This case involves the alleged wrongful nonjudicial foreclosure sale of Plaintiffs' family residence. ECF No. 28, ¶ 1. Before the Court are two motions to dismiss Plaintiffs' complaint: one filed by Defendants Nationstar Mortgage LLC ("Nationstar") and U.S. Bank, National Association as trustee for the Harborview Mortgage Loan Trust 2006-4

1

Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"), ECF No. 31; and one filed by MTC Financial Inc., doing business as Trustee Corps ("Trustee Corps"), ECF No. 33. For the reasons set forth below, the Court GRANTS both motions to dismiss.

## BACKGROUND

On March 16, 2006, Plaintiffs executed an adjustable-rate mortgage secured by a Deed of Trust ("DOT") on a property located at 3155 Mount Acmar Court in San Diego, California (the "Property"). ECF No. 28, ¶¶ 4, 11. The DOT identified Countrywide Home Loans, Inc. as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominal beneficiary, and Reconstruct Company, N.A. as the trustee. *Id.* ¶ 11; ECF 31-2, at 3.

### I.    Assignments of the DOT and Note

The DOT and associated Note then underwent a series of purported Assignments. The order of events is as follows:

On or before April 28, 2006, Plaintiffs' mortgage loan was sold to Harborview Mortgage Loan Trust 2006-4 mortgage-backed securities trust, for which Defendant U.S. Bank serves as a trustee. *Id.* ¶ 12. This securitization was governed by a Pooling Service Agreement, which required that all mortgage loans be transferred to the trust on or before April 28, 2006. *Id.* ¶ 13.

On June 7, 2011, MERS executed an Assignment of Deed of Trust ("Assignment 1"), purporting to transfer all beneficial interest in the Plaintiffs' DOT and Note to BAC Home Loans Servicing LP ("BAC"). *Id.* ¶ 15; ECF No. 31-2, at 25. Assignment 1 was recorded on June 13, 2011. ECF No. 28, ¶ 15; ECF No. 31-2, at 25.

Plaintiffs allege that, at the time of Assignment 1, MERS no longer held any interest in Plaintiffs' mortgage loan to convey, as it had been sold to Harborview Mortgage Loan Trust. ECF No. 28, ¶16. Further, Plaintiffs allege that, even prior to the sale, MERS had no interest in the Note or authority to assign the debt it purports to have assigned. *Id.*

2

25-cv-2242-GPC-BJW

On July 31, 2013, Bank of America National Association ("BANA")—successor by merger to BAC—executed a corporate assignment of Deed of Trust ("Assignment 2"), purporting to transfer the beneficial interest in Plaintiffs' DOT, but not the Note, to U.S. Bank as trustees for the securities trust. *Id.* ¶ 17; ECF No. 31-2, at 28. Plaintiffs allege that Assignment 2 "is a legal nullity" because the DOT cannot be transferred without the Note. ECF No. 28, ¶ 18.

On August 21, 2013, the servicing agent for U.S. Bank executed a Substitution of Trustee purporting to substitute National Default Servicing Corporation ("NDSC") as trustee under the Plaintiffs' DOT. *Id.* ¶ 19; ECF No. 31-2, at 31. The Substitution of Trustee was recorded on August 28, 2023. ECF No. 28, ¶ 19; ECF No. 31-2, at 31. Plaintiffs allege that the Substitution of Trustee "is void" because U.S. Bank lacked authority to execute the Substitution because it never received effective assignment of any interest in Plaintiff's loan. ECF No. 28, ¶ 20.

On October 15, 2013, the Assistant Vice President of BANA executed an Assignment of Deed of Trust ("Assignment 3") purporting to assign the beneficial interest in Plaintiffs' DOT and Note to Nationstar Mortgage LLC. *Id.* ¶ 21; ECF No. 31-2, at 33. Assignment 3 was recorded on October 24, 2013. ECF No. 28, ¶ 21; ECF No. 31-2, at 33. Plaintiffs allege that Assignment 3 "is fraudulent and void" because, at the time of Assignment 3, BANA had already assigned its purported interest in the loan and was not the purported beneficiary of record. ECF No. 28, ¶ 22.

On May 19, 2014, U.S. Bank, as trustee for the securities trust, executed an Assignment of Deed of Trust ("Assignment 4") purporting to assign the beneficial interests in Plaintiffs' DOT to Nationstar. *Id.* ¶ 23; ECF No. 31-2, at 36. Assignment 4 was recorded on July 10, 2013. ECF No. 28, ¶ 23; ECF No. 31-2, at 36. Plaintiffs allege that Assignment 4 is "void" because, at the time of Assignment 4, (1) U.S. Bank had nothing to assign, and

25-cv-2242-GPC-BJW

(2) Nationstar was already the purported beneficiary of record when Assignment 4 was recorded. ECF No. 28, ¶ 24.

On October 10, 2024, Nationstar executed a final Corporate Assignment of Deed of Trust purporting to assign its interest back to U.S. Bank as trustee for the securities trust ("Assignment 5"). ECF No. 28, ¶ 25; ECF No. 31-2, at 48-49. Assignment 5 was recorded on October 15, 2024. ECF No. 28, ¶ 25; ECF No. 31-2, at 48.

Thus, a summary of the Assignments is as follows: (1) from MERS to BAC Home Loans Servicing; (2) from BANA (successor by merger to BAC) to U.S. Bank; (3) from BANA to Nationstar; (4) from U.S. Bank to Nationstar; (5) from Nationstar to U.S. Bank.

## II.    Foreclosure Proceedings

On June 24, 2024, Defendant Trustee Corps recorded a Substitution of Trustee purporting to substitute itself as trustee under the DOT. ECF No. 28, ¶ 27; ECF No. 31-2, at 39. Trustee Corps also recorded a Notice of Default and Election to Sell Under Deed of Trust. ECF No. 28, ¶ 27; ECF No. 31-2, at 43.

The Notice of Default declared a default amount of $647,914.77 as of June 24, 2024, and was executed by Dexter Honeycutt on behalf of Defendant Nationstar as attorney-in-fact for U.S. Bank. ECF No. 28, ¶ 28; ECF No. 31-2, at 43. On October 17, 2024, Trustee Corps recorded a Notice of Trustee's Sale and scheduled a sale for December 4, 2024, which was rescheduled to July 23, 2025. ECF No. 28, ¶¶ 29-30; ECF No. 31-2, at 51.

Plaintiffs sent debt validation letters to Defendants pursuant to the Fair Debt Collection Practices Act, including a September 16, 2024, letter to Nationstar. ECF No. 28, ¶ 31. Defendants did not provide verification, and sent any responses to Plaintiffs' former attorney, not to Plaintiffs. *Id.* ¶ 31.

On July 23, 2025, Trustee Corps conducted a nonjudicial foreclosure sale of the Property. *Id.* ¶ 32. Multiple third-party bidders participated and offered bids beyond the amount necessary to cure the default and cover foreclosure costs. *Id.* ¶ 33. U.S. Bank—

25-cv-2242-GPC-BJW

through its agents Nationstar and Trustee Corps—submitted a credit bid, thereby acquiring the Property for itself. *Id.* ¶ 34. According to Plaintiffs, the credit bid was hundreds of thousands of dollars higher than the amount necessary to satisfy the relevant indebtedness. *Id.* ¶ 35.

Plaintiffs allege that, by making an inflated credit bid, Defendants deprived Plaintiffs of surplus proceeds that would have been payable to them had the Property sold to a third party. *Id.* ¶ 36. Plaintiffs allege that the purchase was not a good faith effort to protect a security interest, but rather an effort to keep Defendants' wrongful foreclosure scheme—including the chain of Assignments—from public scrutiny. *Id.* ¶ 37.

### III.   Procedural Background

Plaintiffs James and Tamara Dolan filed suit against Nationstar, U.S. Bank, Trustee Corps, and Does 1-100, inclusive, in state court. ECF No. 1-3. Defendants removed the case to federal court on the basis of federal question jurisdiction. ECF No. 1, at 2. Plaintiffs filed a First Amended Complaint ("FAC") on February 26, 2026. ECF No. 28.

In their FAC, Plaintiffs bring claims for (1) wrongful foreclosure; (2) violation of the California Homeowners' Bill of Rights, California Civil Code § 2924.17(b); (3) fraud; and (4) intentional infliction of emotional distress against all Defendants. *See generally* ECF No. 28, ¶¶ 42-73. Plaintiffs also bring a claim for quiet title against Defendants U.S. Bank and Nationstar, and a claim for violation of the Federal Debt Collection Practices Act ("FDCPA") against Nationstar. *Id*. Plaintiffs ask the Court to declare the July 23, 2025, Trustee's Sale and accompanying Trustee's Deed Upon Sale as void and issue an order quieting title in Plaintiffs' favor and decreeing that Defendants have no right to the Property. ECF No. 28, at 13. Plaintiffs also seek statutory, actual, and punitive damages, as well as disgorgement and attorneys' fees. *Id.*

25-cv-2242-GPC-BJW

Defendants Nationstar and U.S. Bank have jointly filed a motion to dismiss, ECF No. 31, and Defendant Trustee Corps has separately moved to dismiss, ECF No. 33. The motions are both fully briefed. *See* ECF Nos. 45, 47, 49, 50.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state or allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc*., 710 F.3d 946, 956 (9th Cir. 2013). However, a court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

"Where a motion to dismiss is granted, 'leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1003 (S.D. Cal. 2021) (quoting *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)).

25-cv-2242-GPC-BJW

**A. Pro Se Litigants**

Though they have since acquired representation, ECF Nos. 53, 54, Plaintiffs filed their FAC pro se. *See* ECF No. 28. A document filed pro se is "to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, though courts must interpret pro se filings liberally, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

### I.   Request for Judicial Notice

Defendants Nationstar and U.S. Bank have requested judicial notice of eleven exhibits, all of which are recorded instruments referenced in Plaintiffs' FAC. ECF No. 31-1, at 2-3. The exhibits include the initial Deed of Trust ("DOT"), each Assignment of the DOT, two Substitutions of Trustees, the Notice of Default, the Notice of Trustee's Sale, and the Trustee's Deed Upon Sale. ECF No. 31-1, at 2-3. Defendant Trustee Corps also seeks judicial notice of ten recorded documents, all of which overlap with Nationstar and U.S. Bank's request for judicial notice. ECF No. 33-1, at 2-3.

**A. Legal Standard**

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

Under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by

25-cv-2242-GPC-BJW

sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A court can therefore "take judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Lee*, 250 F.3d at 689; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

### B. Defendant's Request for Judicial Notice - The Recorded Documents

Defendants seek judicial notice of the documents on the grounds that each document is recorded and is therefore a public record. ECF No. 31-1, at 3. Defendants further assert that the Court can notice facts that derive from the legal effect of a legally operative document. *Id.*

Plaintiffs concede that the Court may take judicial notice of the fact that a document was recorded, the date it was recorded, and the parties to the transaction in each document. ECF No. 46, at 2. However, Plaintiffs oppose Defendants' requests to the extent they ask the Court to take judicial notice of the truth of disputed factual statements contained within the documents. *Id.*

To the extent that the recorded documents are public records and Plaintiffs do not dispute their authenticity, the Court takes judicial notice of Exhibits 1-11 to Nationstar and U.S. Bank's motion to dismiss (which includes Exhibits 1-10 of Defendant Trustee Corps' request for judicial notice). ECF No. 31-2. The Court does not grant judicial notice as to the truth of disputed facts stated in the documents. *Lee*, 250 F.3d at 690. However, where appropriate, the Court may "take judicial notice of the documents' legal effect under California's non-judicial foreclosure scheme." *Elliott v. Mortg. Elec. Registration Sys., Inc.*, No. 12-CV-4370 YGR, 2012 WL 12965955, *2 (N.D. Cal. Dec. 7, 2012) (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 265 (2011)).

25-cv-2242-GPC-BJW

Additionally, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks omitted). As noted, Plaintiffs do not dispute the authenticity of the documents, though they take issue with some factual statements contained therein. Further, Plaintiffs' FAC references and relies upon each document included in Defendants' requests for judicial notice. This reliance constitutes additional grounds to grant the request for judicial notice of the recorded documents contained in Exhibits 1-11.

**C. Plaintiffs' Request for Judicial Notice**

Plaintiffs filed a request for judicial notice alongside their opposition to Nationstar and U.S. Bank's motion to dismiss. ECF No. 45-2. Plaintiffs also attached two exhibits to their opposition which are not included in their request for judicial notice. ECF No. 45, at 14-54.

"Courts regularly decline to consider declarations and exhibits submitted in support of [an] opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015).

As exhibits, Plaintiffs attach excerpts from a "2013 Securitization Audit," ECF No. 45, at 14-22, and a "Property Securitization Analysis Report," conducted by Mortgage Compliance Investigators, ECF No. 45, at 24-54. Though these exhibits were not included within Plaintiffs' request for judicial notice, the Court will still consider whether they are the appropriate objects for such. Plaintiffs formally request judicial notice of (1) the Pooling and Servicing Agreement ("PSA") for Harborview Mortgage Loan Trust 2006-4; (2) a Congressional Oversight Panel report titled "Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation"; and (3) a

25-cv-2242-GPC-BJW

Notice of Pendency of Action (Lis Pendens) recorded by Plaintiffs on July 21, 2025. ECF No. 45-2, at 3-4.

Defendants Nationstar and U.S. Bank object to all of Plaintiffs' attached exhibits except for the Lis Pendens. ECF No. 49, at 2. Defendant Trustee Corps also objects to judicial notice of Plaintiffs' exhibits. *See* ECF No. 50, at 6.

The Court will not consider the information contained in the two exhibits attached to Plaintiffs' oppositions. Plaintiffs include no information about the authors of the documents or any additional context regarding their creation or purpose. The Court agrees with Defendants that both documents are unauthenticated hearsay. ECF No. 49, at 2. Additionally, the documents are not relied upon by the FAC, matters of public record, or from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Accordingly, judicial notice is inappropriate.

As to the Pooling Service Agreement ("PSA"), Plaintiffs include only a hyperlink. ECF No. 45-2, at 6. While SEC documents can be the subjects of judicial notice, the Court was unable to use the provided hyperlink to access the PSA. *Alghazwi v. Beauty Health Co.*, 801 F. Supp. 3d 982, 1000 (C.D. Cal. 2025) ("Documents publicly filed with the SEC are subject to judicial notice."). Thus, the Court will not take judicial notice of the PSA that it is not able to locate. However, the Court will accept as true the allegations regarding the PSA included in the complaint, such as the closing date of April 28, 2006. ECF No. 28, ¶ 13.

The Court will also not take judicial notice of the Lis Pendens. As mentioned above, recorded documents are generally properly subject to judicial notice. However, the Court notes that the FAC includes no allegations regarding the Lis Pendens, its filing, or the purported notice that it allegedly provided to Defendants. *See generally* ECF No. 28. Given the utter lack of reference to the Lis Pendens in the FAC, Plaintiffs seemingly seek to utilize judicial notice of the document as a means to supplement and amend their allegations,

10

which they cannot do. *Gerritsen*, 112 F. Supp. 3d at 1033 n.93 (declining judicial notice where the document and facts therein were referenced only in opposition—not in the operative pleadings—and the documents sought to function as an amendment of the complaint). Thus, the Court declines to take judicial notice of the Lis Pendens.

Lastly, as to the Congressional Oversight Panel report, the Court finds that the exhibit provided by Plaintiffs—which is a mere excerpt of the report, without a title or author or indication of where the report can be found—lacks the "sufficient indicia of reliability to justify taking judicial notice of these facts." *United States v. Perez-Corona*, 295 F.3d 996, 1000 n.4 (9th Cir. 2002).

Accordingly, the Court declines Plaintiffs' request for judicial notice.

### 1. Plaintiffs' New Allegations

Plaintiffs' oppositions to Defendants' motions to dismiss also contain several new factual allegations. For instance, Plaintiffs include additional facts about the Pooling Service Agreement—for instance, that it is governed by New York law—and elaborate on its role in Plaintiffs' allegations. ECF No. 45, at 6-7. Plaintiffs also include additional allegations regarding the foreclosure sale—that it was delayed by ninety minutes during which multiple third-party bidders left. *Id.* at 4-5, 9. Lastly, Plaintiffs include allegations regarding a recorded Pendency of Action (Lis Pendens) providing notice of this action affecting title to the Property. *Id.* at 4, 8.

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) (emphasis in original). A court may, however, consider such facts in determining whether to grant leave to amend. See *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Accordingly, the Court will limit its analysis of the motions to dismiss to the allegations included in the FAC.

25-cv-2242-GPC-BJW

**II.     Wrongful Foreclosure**

Plaintiffs bring their wrongful foreclosure claim against all Defendants. Under California law, the elements of a wrongful foreclosure cause of action are "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 408–09 (2015).

Plaintiffs allege that the foreclosure was wrongful because (1) Defendants lacked standing to foreclose because none of them ever held a valid beneficial interest in Plaintiffs' mortgage loan; (2) the foreclosure documents were executed based on void assignments; (3) the Notice of Default was recorded and the foreclosure pursued in violation of California Civil Code §§ 2924.17 and 2923.55; and (4) Defendants' conduct—making an inflated credit bid to outbid third-party purchasers and deprive Plaintiffs of surplus proceeds—constituted oppression, fraud, and malice.

Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs lack standing to challenge the Assignments and did not suffer any prejudice stemming from them.

**A. Void or Voidable Assignments**

"[A] home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void." *In re Turner*, 859 F.3d 1145, 1149 (9th Cir. 2017) (quoting *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919, 929 (2016)). "Unlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire." *Id.* (quoting *Yvanova*, 62 Cal. 4th at 936).

25-cv-2242-GPC-BJW

A plaintiffs' standing to raise such a challenge rests upon the debtor's "assert[ion of] her own interest in limiting foreclosure on her property to those with legal authority to order a foreclosure sale." *Yvanova*, 62 Cal. 4th at 937. Thus, for a wrongful foreclosure plaintiff bringing her claim based on a void assignment, her "standing is predicated upon the loss of ownership of her home due to an allegedly illegal trustee's sale that, but for the purported beneficiary's actions in ordering the sale based upon the allegedly void assignment, would not have occurred." *Marshall v. Gen. Motors/Corp. Serv. Co.*, No. 18-CV-2551-GPC-JLB, 2019 WL 2642661, at *5 (S.D. Cal. June 27, 2019) (citing *Yvanova*, 62 Cal. 4th at 937).

Plaintiffs allege that the assignments at issue are void because (1) MERS lacked authority to execute Assignment 1, ECF No. 28, ¶ 16, ECF No. 45, at 2; (2) Assignments were made after the securitization trust's closing date outlined in the Pooling Service Agreement, ECF No. 28, ¶ 13, ECF No. 45, at 7-8; (3) the Deed of Trust was separated from the loan. ECF 28, ¶ 18. Each of these arguments fails to allege a void assignment.

### 1. MERS' Authority to Assign the DOT

Plaintiffs allege that MERS lacked authority to execute Assignment 1 because Countrywide Home Loans, Inc. ("Countrywide"), had previously sold the loan. ECF No. 28, ¶ 16. However, this allegation is rebutted by the plain language of the Deed of Trust. The Deed of Trust identifies Countrywide as the "Lender," and names MERS as a "beneficiary" of the loan and a "nominee for Lender *and Lender's successors and assigns.*" ECF 31-2, at 3 (emphasis added). The DOT continues that "MERS holds only legal title to the interests granted by the Borrower in this Security instrument, but . . . MERS (as nominee for Lender *and Lender's successors and assigns*) has the right: to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the property." *Id.* at 5 (emphasis added). Courts have repeatedly held that this language grants MERS the authority to assign its interest in a DOT even after the initial lender has

13

25-cv-2242-GPC-BJW

transferred the property. *Avila v. Wells Fargo Bank, Nat'l Ass'n*, No. C 16-05904 WHA, 2016 WL 7425925, at \*2-\*3 (N.D. Cal. Dec. 23, 2016); *Ratliff v. JPMorgan Chase Bank N.A.*, No. 17-CV-02155-EMC, 2017 WL 2876141, at \*8 (N.D. Cal. July 6, 2017); *Marshall*, 2019 WL 2642661, at \*8. Thus, the recorded documents indicate that MERS was authorized to assign the DOT in Assignment 1, and that such an assignment was not void. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts entertaining motions to dismiss need not accept as true allegations that "contradict matters properly subject to judicial notice").

To the extent that Plaintiffs argue that MERS "never held any interest in the Note and had no authority to assign the debt," their argument also falls short. ECF No. 28, ¶ 16. "California [courts] have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust." *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 551 (9th Cir. 2016) (unpublished) (quoting *Herrera v. Fed. Nat'l Mortg. Ass'n,* 205 Cal. App. 4th 1495 (2012)).

### 2.  Untimely Assignment Under Pooling Service Agreement

To the extent that Plaintiffs argue that the Assignments were void because they were executed after the Trust's Pooling Service Agreement's closing date, California courts have consistently held that such an error renders an assignment voidable, not void. *Turner v. Wells Fargo Bank NA*, 859 F.3d 1145, 1149-51 (9th Cir. 2017) (rejecting *Glaski v. Bank of America*, 318 Cal. App. 4th 1079 (2016)); *Dahnken v. Wells Fargo Bank, NA*, 705 F. App'x 508, 510 (9th Cir. 2017).

### 3.  Separation of the Note from the Deed of Trust

Next, Plaintiffs' allegations that the Assignments are void because they separated the Note from DOT are also unsuccessful. In fact, "California's non-judicial foreclosure law rejects the splitting-the-note theory." *Kramer v. Bank of Am., N.A.*, No. 1:13-cv-01499, 2014 WL 1577671, at \*8 (E.D. Cal. Apr. 17, 2014); *see also Spangler v. Selene Fin. LP*,

14

25-cv-2242-GPC-BJW

No. 16-CV-01503-WHO, 2016 WL 3951654, at *4 n.8 (N.D. Cal. July 22, 2016) (rejecting plaintiff's argument that her mortgage was rendered void when the deed of trust was allegedly assigned without the promissory note); *Marshall*, 2019 WL 2642661, at *6 ("Because a 'party need not possess [the] promissory note to foreclose,' there is no reason to credit Plaintiff's assertion that the assignments are void for want of the Note." (quoting *Robertson v. Citibank, NA*, 713 F. App'x. 612, 613 (9th Cir. 2018) (unpublished)).

### 4. Irregularities in Transfer of DOT

The Court does take note of the problematic nature of Assignment 3, wherein Bank of America, N.A. ("BANA") purported to assign its interest in the Deed of Trust to Nationstar after already assigning that interest to U.S. Bank. ECF No. 28, ¶¶ 17, 21; ECF No. 31-2, at 28, 33. Such an Assignment is seemingly "erroneous and void, as BANA had nothing to assign because interest in the DOT belonged to [U.S. Bank]." *Ponthieux v. Nationstar Mortg., LLC*, No. 218CV0608TLNDBPS, 2022 WL 3230033, at *6 (E.D. Cal. Aug. 10, 2022), *report and recommendation adopted*, No. 2:18-CV-00608-TLN-DB, 2022 WL 4484097 (E.D. Cal. Sept. 27, 2022), *aff'd*, No. 22-16603, 2023 WL 8047828 (9th Cir. Nov. 21, 2023); *see also Hill v. U.S. Bank, N.A.*, Case No. EDCV 19-110 JGB (SPx), 2019 WL 3240107, at *7 (C.D. Cal. Apr. 24, 2019) ("Where an entity holding no interest in a note purports to sell that interest to another, the assignment is void, not merely voidable, because there was no interest to assign.").

However, the flawed nature of Assignment 3 still does not convey standing to Plaintiffs because it does not bear on the legal authority of the ultimate foreclosing party. *See Yvanova*, 62 Cal. 4th at 937. Per Plaintiffs' complaint, after BANA purported to transfer its interest to Nationstar, U.S. Bank—the party to which the recorded documents demonstrate an unbroken chain of title—assigned its interest to Nationstar on May 19, 2014 (recorded on July 10, 2014). ECF No. 28, ¶ 23; ECF No. 31-2, at 36. Thus, aside from the apparent flaws in Assignment 3, Plaintiffs have not alleged that those errors impacted

25-cv-2242-GPC-BJW

Nationstar's ultimate interest in the DOT or authority to assign that interest back to U.S. Bank.[1] *C.f. Pointheaux*, 2021 WL 211252, at *5 (declining to dismiss claims when BANA similarly assigned its interest in the DOT twice, but where the alleged ultimate interest lied with *different* parties). *See also Kalnoki v. First Am. Tr. Servicing Sols.*, LLC, 8 Cal. App. 5th 23, 50, 214 Cal. Rptr. 3d 292, 313 (2017) ("Thus, even assuming for sake of argument that prejudice can be established simply by alleging facts showing the wrong party foreclosed as found in *Sciarratta*, the judicially noticeable documents in this case show the proper party foreclosed[.]").

Accordingly, omitting Assignment 3, the chain of recorded assignments at hand—(1) from MERS to BAC, (2) from BANA (successor by merger to BAC) to U.S. Bank, (3) from U.S. Bank to Nationstar, and (4) from Nationstar to U.S. Bank—demonstrate a cohesive chain of title from MERS to U.S. Bank, and Plaintiffs' allegations have not shown that any Assignment impacting U.S. Bank's ultimate interest is void. Thus, any alleged irregularities or defects in the Assignments themselves do not demonstrate that U.S. Bank lacked authority to foreclose.

**B. Prejudice**

However, even if a defective assignment has taken place, a plaintiff alleging wrongful foreclosure based on a void assignment must show some additional prejudice

---

[1] The Court also notes that, per the recorded documents, the Substitution of Trustee instituting Trustee Corps as Trustee under the DOT was executed on June 12, 2024 (recorded on June 24, 2024), and lists U.S. Bank as the current beneficiary of the DOT. ECF No. 31-2, at 39-41. However, U.S. Bank executed its Assignment of DOT to Nationstar on May 19, 2014 (recorded on July 10, 2014), ECF No. 31-2, at 36, and Nationstar did not Assign the DOT back to U.S. Bank until October 10, 2024 (recorded October 15, 2024). The Court will not assess whether this irregularity might bear on Plaintiffs' claims, as Plaintiffs make no allegations regarding the validity of the Substitution of Trustee to MTC.

25-cv-2242-GPC-BJW

beyond the foreclosure itself. *Cardenas v. Caliber Home Loans, Inc*., 281 F. Supp. 3d 862, 872 (N.D. Cal. 2017) ("The weight of published California Court of Appeal decisions, however, holds that a borrower must alleges prejudice beyond the foreclosure itself."). Specifically, "if an allegedly defective assignment did not alter the plaintiff's payment obligations, and plaintiff does not deny that she defaulted and her debt is in arrears, she cannot show that the allegedly invalid assignment could cause injury and warrant voiding the foreclosure sale." *Ancheta v. Mortg. Elec. Registration Sys., Inc*., No. 16-CV-06520-YGR, 2017 WL 3033630, at *2 (N.D. Cal. July 18, 2017), *aff'd,* 730 F. App'x 509 (9th Cir. 2018). *See also Dahnken v. Wells Fargo Bank, NA*, 705 F. App'x 508, 509–10 (9th Cir. 2017) ("Further, even if MERS lacked authority to transfer the note, the assignment merely substituted one creditor for another and did not change [plaintiff's] obligations, so [plaintiff] cannot show the prejudice necessary to challenge foreclosure.") (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011), *disapproved of on other grounds by Yvanova*, 62 Cal. 4th at 939 n.13).

Thus, a plaintiff alleging wrongful foreclosure on the basis of a void assignment must allege additional harm stemming from the assignment, "like (1) that the void assignment changed the borrower's payment obligations; (2) that the void assignment 'interfered in any manner with [the borrower's] payment'; or (3) that the true owner of the loan—the entity that actually has the authority to foreclose—'would have refrained from foreclosure under the circumstances presented.'" *Cardenas*, 281 F. Supp. 3d at 872 (quoting *Fontenot*, 198 Cal. App. 4th at 272). This requirement rests on the reasoning that "because an assignment on its own 'merely substitute[s] one creditor for another, without changing' the borrower's payment obligations, the 'true victim' of a void assignment is not the borrower, but rather the true owner of the loan, because a void assignment causes the true owner of the loan to 'suffer[] the unauthorized loss' of the loan." *Id*. (quoting *Fontenot*, 198 Cal. App. 4th at 480).

25-cv-2242-GPC-BJW

Because Plaintiffs' FAC does not allege any prejudice beyond the foreclosure itself, the Court finds that Plaintiffs have not stated a claim for wrongful foreclosure under California law on the basis of defective Assignments. Plaintiffs do not allege that any allegedly void Assignment affected Plaintiffs' payment obligations or their ability to meet them, nor that the assignments led to a foreclosure that otherwise would not have occurred. *See Cardenas*, 281 F. Supp. 3d at 872 (citing cases and rejecting the reasoning in *Sciarratta v. U.S. Bank N.A.*, 247 Cal. App. 4th 552, 565–66 (2016)).

Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' wrongful foreclosure cause of action. Because Plaintiffs' may allege additional facts regarding the prejudice experienced or the voidness of the recorded documents, the dismissal is with leave to amend.

**C. Other Theories of Wrongful Foreclosure**

Plaintiffs allege additional wrongful foreclosure theories that do not rely on Plaintiffs' claims that the Assignments are void. Specifically, Plaintiffs allege the foreclosure was wrongful because the foreclosure documents violated California Civil Code § 2924.17 and § 2923.55 and because U.S. Bank's inflated credit bid constituted oppression, fraud, and malice.

As discussed below, Plaintiffs have failed to allege that Defendants violated § 2924.17. As to Plaintiffs' claim that the foreclosure was wrongful based on a violation of § 2923.55, Plaintiffs FAC contains no allegations in support of such a claim other than the conclusion that foreclosure "was pursued in violation of . . . 2923.55." ECF No. 28, ¶ 44(c). Even liberally construing the FAC, such bare and conclusory allegations cannot support Plaintiffs' wrongful foreclosure claim.

To the extent that Plaintiffs allege that the foreclosure was wrongful because Defendant U.S. Bank made an "inflated credit bid" to acquire the Property for itself, their claim also fails. ECF No. 28, ¶ 40. Plaintiffs allege that the amount bid by Defendant was

25-cv-2242-GPC-BJW

"hundreds of thousands of dollars above the default amount." *Id.* ¶ 2. However, the recorded Notice of Trustee's Sale indicated that the total amount of unpaid balance in addition to costs and advances was estimated to be $1,155,872.87. ECF No. 31-2, at 52. Nowhere in the FAC do Plaintiffs dispute the accuracy of the balance of their debt at any time, including as stated in the Notice of Trustee's sale. Further, the Trustee's Deed Upon Sale indicates that the amount of the unpaid debt was exactly equal to the amount paid by U.S. Bank—$1,201,556.66. ECF No. 31-2, at 55. Thus, Plaintiffs' allegations that U.S. Bank's credit bid was maliciously greater than the default amount are contradicted by the recorded documents and cannot form the basis of Plaintiffs' wrongful foreclosure claim. *See Sprewell*, 266 F.3d at 988 (courts entertaining motions to dismiss need not accept as true allegations that "contradict matters properly subject to judicial notice"); *see also Biancalana v. T.D. Serv. Co.*, 56 Cal. 4th 807, 816 (2013) (a "lender is entitled to make a credit bid up to the amount of the outstanding indebtedness" (internal quotation marks and citation omitted)).

### 1. Tender

Lastly, Plaintiffs have failed to allege tender. "The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure." *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 937 (S.D. Cal. 2020) (quoting *Green v. Central Mortg. Co.,* 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015)). "The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1022 (1989).

California caselaw recognizes four exceptions to the tender rule, including where (1) a borrower attacks the validity of the underlying debt; (2) the person seeking to set aside the sale has a counter-claim against the beneficiary; (3) tender would be inequitable; and

25-cv-2242-GPC-BJW

(4) the trustee's deed is void on its face. *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112–13 (2011). A plaintiff may be excused from the tender rule if his allegations support an exception. *See Sciarratta v. US. Bank Nat'l Ass'n*, 247 Cal. App. 4th 552, 568 (2016) (if the plaintiff properly alleges the foreclosure is void, tender is not required in causes of action for wrongful foreclosure, cancellation, of instruments and quiet title); *Azam v. Wells Fargo Bank, N.A.*, 677 Fed. App'x 326, 327 (9th Cir. 2017) ("A full tender may not be required where one or more of four recognized exceptions applies."). Courts have discretion in considering whether application of the tender rule would be equitable in a given circumstance. *Santana*, 495 F. Supp. 3d at 938.

While allegations of a void sale—if sufficiently pled—may invoke an exception to the tender rule, Plaintiffs' other foreclosure theories do not invoke any exception to the tender rule. Thus, Plaintiffs' alternate theories of wrongful foreclosure further fail because Plaintiffs have not alleged tender. *See Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1046 (N.D. Cal. 2023).

### D. Trustee Corps' Trustee Privilege

While Plaintiffs have failed to state a claim for wrongful foreclosure in any capacity, Defendant Trustee Corps raises additional defenses unique to its role as Trustee.

Plaintiffs' wrongful foreclosure claim against Trustee Corps seems to rest on Trustee Corps' role in recording the foreclosure documents. *See generally* ECF No. 28 ¶¶ 42-44. Trustee Corps argues that its foreclosure-related actions taken in its capacity as Trustee are subject to privilege under California Civil Code § 2924(d). ECF No. 33, at 14-15.

Section 2924(d) states that the "'mailing, publication, and delivery' of foreclosure notices and 'performance' of foreclosure procedures'" are "privileged communications" under California law. *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 605 (E.D. Cal. 2009) (quoting Cal. Civ. Code § 2924(d)); *see also Permito v. Wells Fargo Bank, N.A.*, No. C–12–00545–YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) (citing

25-cv-2242-GPC-BJW

*Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008)) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).").

Trustee Corps argues that its actions are entitled to absolute privilege. ECF No. 33, at 15-17. In their opposition, Plaintiffs dispute that Trustee Corps is entitled to absolute privilege but concede that Trustee Corps' actions are subject to qualified privilege. ECF No. 47, at 3-4. California courts have noted that § 2924 "fails to specify whether the intended . . . privilege is absolute or qualified, creating an ambiguity in the statute." *Alphonso v. Real Time Resols., Inc.*, No. 23-CV-01488-JSC, 2023 WL 3794502, at *2 (N.D. Cal. June 2, 2023) (quoting *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334 (2008)) (cleaned up).

The Court need not resolve which privilege applies because Trustee Corps' alleged activity was privileged under even the lower qualified privilege standard. Trustee Corps' conduct in recording foreclosure-related documents is covered by qualified privilege unless it was undertaken with malice. *Alphonso*, 2023 WL 3794502, at *2. In this context, an action was undertaken with malice if "the publication was motivated by hatred or ill will towards the plaintiff or . . . the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336 (internal quotation marks and citation omitted).

Plaintiffs have not alleged malice on behalf of Trustee Corps, nor do their allegations support an inference of actual malice. The only allegation of malice in the FAC refers to U.S. Bank's conduct in making an "inflated credit bid." ECF No. 28, ¶¶ 40, 44(d). Accordingly, Plaintiffs' wrongful foreclosure claim against Trustee Corps further fails due to statutory privilege.

//

//

21

25-cv-2242-GPC-BJW

### III.   Quiet Title

Plaintiffs allege a claim for quiet title against Defendants Nationstar and U.S. Bank. The FAC alleges that "Plaintiffs are the record owners of the Subject Property and are entitled to exclusive possession thereof"; that "Defendant U.S. Bank claims an interest in the Property by virtue of the Trustee's Deed Upon Sale"; and that "Defendant Nationstar claims an interest as purported servicer and through various assignments." ECF No. 28, ¶¶ 48-49.

An action to quiet title can be brought "to establish title against adverse claims to real or personal property or any interest therein." Cal. Civ. Proc. Code § 760.020. To state a cause of action for quiet title, a plaintiff must allege (1) the property's legal description and its street address or common designation; (2) the plaintiffs' title and the basis of the title; (3) the "adverse claims to the title against which a determination is sought"; (4) the "date the determination is sought"; and (5) a prayer for the determination of the plaintiffs' title against the adverse claims. Cal. Civ. Proc. Code § 761.020. In California, a plaintiff may "assert quiet title only if they currently possess an interest in the property at issue." *Jacobsen v. Aurora Loan Servs., LLC*, 661 F. App'x 474, 476 (9th Cir. 2016) (unpublished) (citing *Gerhard v. Stephens*, 68 Cal. 2d 864 (1968)); *Lanin v. Wells Fargo Bank NA*, No. CV S-09-2461 FCD/DAD, 2010 WL 11574165 (E.D. Cal. Feb. 19, 2010) ("In order to proceed on a claim to quiet title, the plaintiff must have a legal interest in the property.")

Here, a claim for quiet title may not be brought against Defendant Nationstar as the loan servicer, because a loan servicer does not have an adverse interest to the property. *Santana*, 495 F. Supp. 3d at 949 ("[A] quiet title claim cannot be alleged against Defendant BSI, the loan servicer[.]"); *Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 3552061, at *20 (S.D. Cal. June 30, 2016) ("A loan servicer cannot have an adverse interest to property."). To the extent Plaintiffs allege that Nationstar holds an adverse interest due to the previous assignments, the recorded documents show that Nationstar

25-cv-2242-GPC-BJW

assigned its interest in the DOT to U.S. Bank on October 10, 2024, before the foreclosure sale on July 23, 2025. ECF No. 31-2, at 49; ECF No. 28 ¶ 32. Thus, Plaintiffs' claim for quiet title against Nationstar is DISMISSED with prejudice.

Defendant U.S. Bank does have an interest in the property after purchasing the property at the foreclosure sale on July 23, 2025. ECF No. 28, ¶ 32; ECF No. 31-2, at 55. However, while Plaintiffs have alleged that U.S. Bank has an interest in the property, Plaintiffs have failed to show that they retain any interest in the property themselves. Though Plaintiffs assert that they are "record owners" of the Property, they have not alleged any facts supporting that conclusion. ECF No. 28, ¶ 48. Indeed, Plaintiffs allege, and the judicially noticed documents confirm, that a Trustee's Deed Upon Sale was recorded conveying the Property to U.S. Bank. *Id.* ¶ 41.

To the extent that Plaintiffs allege that the sale did not extinguish Plaintiffs' interest in the property due to the invalid Assignments, the Court has determined that Plaintiffs' allegations are insufficient to demonstrate that the Assignments or ultimate foreclosure were void. While Plaintiffs, in their opposition, refer to the recorded Lis Pendens in support of their quiet title claim, the FAC makes no reference to the document. ECF No. 45, at 12. Further, Plaintiffs "have not alleged that they are the rightful owners of the property, i.e. that they have satisfied their obligations under the Deed of Trust." *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048 (N.D. Cal. 2009).

Accordingly, Plaintiffs have failed to state a claim for quiet title against U.S. Bank, and U.S. Bank's motion to dismiss this claim is GRANTED with leave to amend.

## IV.   Violation of California Civil Code § 2924.17

Plaintiffs allege a violation of § 2924.17 by all Defendants. "California Civil Code § 2924.17(a) mandates that certain documents related to the foreclosure process, including 'a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure,' 'shall

25-cv-2242-GPC-BJW

be accurate and complete and supported by competent and reliable evidence.'" *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 868 (N.D. Cal. 2017) (quoting Cal. Civ. Code § 2924.17).

In support of their § 2924.17 claim, Plaintiffs allege that "the foreclosure documents recorded by or on behalf of Nationstar—including the Substitution of Trustee, Notice of Default, and Notice of Trustee's Sale—were not supported by competent and reliable evidence substantiating Plaintiffs' default or Defendants' right to foreclose." ECF No. 28, ¶ 55. The allegations continue that "Nationstar failed to review competent evidence before recording these documents." *Id.* ¶ 56.

### A. Defendant Trustee Corps

Trustee Corps argues that Plaintiffs have "failed to allege any facts demonstrating a violation of § 2924.17 by Trustee Corps." ECF No. 33, at 23. The Court agrees. While Plaintiffs' § 2924.17 claim is brought against "All Defendants," Plaintiffs include no allegations regarding Trustee Corps' conduct or how it violated the statute. Indeed, Plaintiffs refer only actions taken "by or on behalf of Nationstar." ECF No. 28, ¶ 55. Accordingly, Defendant Trustee Corps' motion to dismiss is GRANTED as to Plaintiffs' § 2924.17 claim.

### B. Defendants Nationstar and U.S. Bank

Plaintiffs' allegations under § 2924.17 amount to a recitation of the elements of the claim. Plaintiffs do not indicate what aspects of the Substitution of Trustee, Notice of Default, and Notice of Trustee's sale were incorrect or unsupported by evidence. Further, Plaintiffs do not indicate what competent evidence Nationstar failed to review.

To the extent Plaintiffs' § 2924.17 claim rests on Defendants' alleged lack of authority to foreclose based on the allegedly defective chain of title, the Court has already determined Plaintiffs allegations have not shown that Defendants lacked authority to foreclose where the recorded documents demonstrate that (1) MERS had the authority to

24

execute Assignment 1; and (2) a cohesive chain of title from MERS to BANA to U.S. Bank to Nationstar to U.S. Bank.

To support their § 2924.17 claim, Plaintiffs refer to information included in the 2013 Securitization Audit which they attached as an exhibit to their opposition. ECF No. 45, at 9. However, as mentioned above, the Court cannot consider such evidence—which is not included in the complaint, relied upon by the complaint, or from a source whose authority cannot reasonably be questioned—in adjudicating the motions to dismiss.

Accordingly, Plaintiffs' have failed to allege a violation of § 2924.17, and the Court GRANTS Defendants' motions to dismiss with leave to amend.

## V.    Fraud

Plaintiffs bring a claim for fraud against all Defendants. Under California law, the necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1266, 1239 (2016).

Defendant Trustee Corps argues that Plaintiffs' fraud allegations are barred by the three-year statute of limitations to the extent they arise from the allegedly inadequate Assignments that took place from 2011 to 2014. ECF No. 33, at 24 (citing Cal. Code Civ. Proc. §338(d)). However, this argument overlooks that Plaintiffs allege fraudulent statements in relation to the foreclosure documents filed in 2024. Thus, Plaintiffs' fraud claims are timely.

Fraud allegations are subject to the heightened pleading requirement set forth in Rule 9(b), which requires that a plaintiff must "state with particularity the circumstances constituting fraud or mistake[.]" Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024)

(quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). "In other words, it must provide 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). "Most importantly," a plaintiff must explain what is false about the statement and why. *Id.* (citing *Davidson*, 889 F. 3d at 964).

Plaintiffs allege that each Defendant "knowingly made false representations in recorded documents and communications with Plaintiffs." ECF No. 28, ¶ 59. However, Plaintiffs then identify several "statements" that were not made by any Defendant in this case. *See* ECF No. 28, ¶ 59 (referencing statements made by MERS, BANA, and NDSC). Plaintiffs then allege that "all of the above fraudulent misrepresentations were repeated, falsely ratified and otherwise associated with the Notice of Default recorded on June 24, 2024 by MTC at the direction of Nationstar on behalf of U.S. Bank, and the subsequent Notice of Trustee's Sale recorded on October 17, 2024, and the illegal sale of July 23, 2025, and the associated Trustee's Deed Upon Sale recorded August 12, 2025." *Id.* ¶ 63.

This statement is too vague to satisfy Rule 9(b)'s heightened pleading standards. It does not allege which representations were actually made by which Defendant, alleging that some were "repeated" in a document or communication while others were merely "otherwise associated." *Id.* The allegations are unclear as to which Defendant made which statement in which communication, and how and why each identified statement was misleading or false. This falls short of the Rule 9(b) pleading requirements.

Additionally, Plaintiffs do not indicate how they relied on the identified statements beyond "Plaintiffs justifiably relied on these representations." *Id.* ¶ 62. Plaintiffs do not allege any action they took or did not take in reliance on the alleged fraudulent statements. "[A] formulaic recitation of the elements of a cause of action will not do" to sufficiently

26

25-cv-2242-GPC-BJW

state a claim. *Twombly*, 550 U.S. at 545. Thus, Plaintiffs have also failed to allege the reliance element of a fraud claim.

Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' fraud claims. Because Plaintiffs may possibly allege additional facts regarding the alleged fraudulent statements and Plaintiffs' reliance thereon, the dismissal is without prejudice and with leave to amend.

## VI. Federal Debt Collection Practices Act

Plaintiffs allege a violation of the Federal Debt Collection Practices Act against Defendant Nationstar. "In order to state a claim under the FDCPA, a plaintiff must allege facts that establish the following: (1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Bird v. Real Time Resols., Inc.*, 183 F. Supp. 3d 1058, 1062 (N.D. Cal. 2016) (quoting *Dang v. CitiMortgage, Inc.*, No. 5:11–cv–05036 EJD, 2012 WL 762329, at *3 (N.D.Cal. Mar. 7, 2012)).

Plaintiffs specifically allege a violation of 15 U.S.C. § 1692g(b) for failing to provide Plaintiffs with proper debt verification. ECF No. 28, ¶ 67. Plaintiffs also make secondary FDCPA allegations, alleging that: "Nationstar's conduct in pursuing foreclosure without legal authority and making false representations in connection with debt collection also violates 15 U.S.C. § 1692e (false or misleading representations) and § 1692f (unfair or unconscionable means)." ECF No. 28, ¶ 69.

Section 1692g(a) outlines information that a debt collector shall provide to a consumer within five days of the "initial communication" regarding the collection of a debt. 15 U.S.C. § 1692g(a). After receiving that information, a consumer has thirty days to dispute the validity of the debt. 15 U.S.C. § 1692g(a)(3). If the consumer does so, then the debt collector must obtain verification of the debt. *Id.* § 1692g(b).

25-cv-2242-GPC-BJW

Plaintiffs' FAC includes no allegations regarding when or if any "initial communication" occurred, or when and whether Nationstar sent the required information under § 1692g(a). Given the lack of such information, Plaintiffs also do not allege that they sought verification of the debt within the thirty-day period necessary to give rise to Nationstar's obligations under § 1692g(b). Thus, Plaintiffs have not alleged facts demonstrating that Nationstar violated § 1692g(b). *McMillan v. Bank of Am., N.A.*, No. 14CV1575-MMA BLM, 2015 WL 1942743, at *13 (S.D. Cal. Apr. 15, 2015) (dismissing § 1692g(b) claim where plaintiff failed to allege that notification of the disputed debt was made within the thirty-day period after the receipt of the initial communication); *Aragon v. DZR Grp. Inc.,* No. 25-CV-0264-AGS-BLM, 2025 WL 1082755, at *3 (S.D. Cal. Apr. 10, 2025) (same).

Next, to the extent that Plaintiffs' § 1692e claims relate to Nationstar's conduct in pursuing the nonjudicial foreclosure, such a claim must fail, as such conduct is not "debt collection" under § 1692e. *Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964 (9th Cir. 2017). More specifically, "the Ninth Circuit has held that the FDCPA can only impose liability when an entity is attempting to collect money, and 'the object of a non-judicial foreclosure sale is to retake and resell the security, not to collect money from the borrower.'" *Ramirez v. NBGI, Inc.*, No. CV 22-5695-MWF (JPRX), 2024 WL 1677517, at *4 (C.D. Cal. Mar. 8, 2024), *reconsideration denied*, No. CV 22-5695-MWF (JPRX), 2024 WL 3512835 (C.D. Cal. May 9, 2024) (quoting *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017)). Plaintiffs have made no allegations that Nationstar attempted to collect on any debt—only claims in relation to Nationstar's general foreclosure-related conduct and communications. Additionally, because Plaintiffs' § 1692e claim is based on "false representations in connection with debt collection," such a claim sounds in fraud and is subject to the heightened pleading standards of 9(b), which Plaintiffs have failed to meet. *Mill v. SchoolsFirst Fed. Credit Union*, No. 5:25-CV-00060-SSS-

25-cv-2242-GPC-BJW

DTBX, 2025 WL 3049844, *4 (C.D. Cal. Aug. 20, 2025) (citing cases and explaining how § 1692e claims may be subject to Rule 9(b) pleading standard when they sound in fraud). Accordingly, Plaintiffs' FDCPA claims related to Nationstar's foreclosure-related actions under § 1692e are unsuccessful.

The Court acknowledges that the FDCPA does regulate security interest enforcement activity—such as a nonjudicial foreclosure—through § 1692f(6). *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 970 (9th Cir. 2017) (explaining that "while the FDCPA regulates security interest enforcement activity, it does so only through Section 1692f(6)," and that "[a]s for the remaining FDCPA provisions, 'debt collection' refers only to the collection of a money debt"). Section 1692f(6) asserts that a debt collector violates the FDCPA if it takes a nonjudicial action to effect dispossession of property where, among other things, "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Thus, while § 1692f(6) does present a potential pathway for Plaintiffs to challenge Nationstar's foreclosure-related conduct under the FDCPA, Plaintiffs have not adequately stated a claim under the statute. Plaintiffs' claims that Nationstar lacked authority to initiate foreclosure proceedings are based on the alleged invalidity of MERS initial assignment; a theory that the Court has rejected due to the plain language of the recorded DOT. Further, Plaintiffs have not alleged that they were not in default on their loan such that a foreclosing actor had no right to initiate foreclosure proceedings. *See, e.g.*, *Abrams v. Planet Home Lending, LLC*, No. CV 21-02906-MWF (EX), 2021 WL 3932306, at *5 (C.D. Cal. July 23, 2021).

Accordingly, the Court GRANTS Defendant Nationstar's motion to dismiss Plaintiffs' FDCPA claim. To the extent that Plaintiffs seek to bring claims related to Nationstar's foreclosure-related activity under a section of the FDCPA other than § 1692f(6), such claims are dismissed without leave to amend. However, to the extent that

Plaintiffs can allege additional facts in support of their § 1692g(b) or § 1692f(6) claims, the claims are dismissed with leave to amend.

### VII.    Intentional Infliction of Emotional Distress

Plaintiffs bring their claim for intentional infliction of emotional distress against all Defendants. A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (Cal. 2009) (internal quotation marks and citation omitted). Conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Plaintiffs allege that Defendants' conduct was outrageous and extreme because Defendants allegedly (1) pursued foreclosure through fraudulent documents; (2) made inflated credit bids to prevent competitive bidding; and (3) wrongfully deprived Plaintiffs of their home. ECF No. 28, ¶ 13.

As discussed above, the recorded documents contradict Plaintiffs' assertions that (1) the foreclosing parties lacked authority to foreclosure because of void assignments, and (2) that U.S. Bank's credit bid was inflated beyond the debt due. Additionally, Plaintiffs have insufficiently alleged that the documents were fraudulent. Lastly, Plaintiffs have also failed to state a claim that the foreclosure was wrongful. Thus, Plaintiffs have failed to allege that any Defendant's conduct qualifies as outrageous or is indicative of bad faith. *See, e.g., Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010); *Espinoza v. Mroczeck*, No. 23-CV-00228, 2024 WL 201104, at *3 (E.D. Cal. Jan. 17, 2024), *report and recommendation adopted*, No. 223CV00228TLNJDP, 2024 WL 689544 (E.D. Cal. Feb. 20, 2024); *Jose v. Select Portfolio Servicing, Inc.*, No. 16CV106-MMA

30

(RBB), 2016 WL 4581394, at *6 (S.D. Cal. Aug. 8, 2016) ("[M]any courts have found as a matter of law that foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress.").

Thus, the Court GRANTS Defendants' motions to dismiss Plaintiffs' claim for intentional infliction of emotional distress. Because Plaintiffs may possibly allege additional facts showing Defendants' bad faith in the foreclosure process, the Court grants leave to amend.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants Nationstar and U.S. Bank's motion to dismiss, ECF No. 31, and Defendant Trustee Corps' motion to dismiss, ECF No. 33.

Plaintiffs' claims are dismissed WITHOUT leave to amend only as to (1) Plaintiffs' claim for quiet title against Defendant Nationstar and (2) Plaintiffs' claims related to Nationstar's foreclosure-related acts under any section of the FDCPA other than § 1692f(6).

All other claims are dismissed without prejudice and with leave to amend.

If Plaintiffs seek to file a Second Amended Complaint, they may do so within thirty-five (35) days of the issuance of this Order.

IT IS SO ORDERED.

Dated:  June 17, 2026

Hon. Gonzalo P. Curiel
United States District Judge

25-cv-2242-GPC-BJW